## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Civil No. 13-01524 (RA) |
| **FAIRFIELD SENTRY LIMITED,** | <u>**On Appeal From:**</u> |
| Debtor. | **Case No. 10-13164 (BRL)** |
| **KENNETH KRYS,** | |
| Appellant, | |
| -v- | |
| **FARNUM PLACE, LLC,** | |
| Appellee. | |

## FARNUM PLACE, LLC'S BRIEF IN RESPONSE
## TO FOREIGN REPRESENTATIVE'S OPENING BRIEF

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kathleen M. Sullivan
Robert Juman
Scott C. Shelley
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Telecopier: (212) 849-7100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Eric D. Winston
Shane McKenzie
Matthew Scheck
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Telecopier: (213) 443-3100

*Counsel for Farnum Place, LLC*

Dated:       May 6, 2013
                  New York, New York

## TABLE OF CONTENTS

**Page**

STATEMENT REGARDING APPELLATE JURISDICTION......................................1

STATEMENT OF ISSUES ON APPEAL ...............................................................1

APPLICABLE STANDARDS OF APPELLATE REVIEW .......................................2

STATEMENT OF THE CASE.................................................................................2

FACTUAL BACKGROUND...................................................................................3

      A.     Sentry's Liquidation in the BVI "Foreign Main" Proceeding and
Commencement of the Chapter 15 Case................................................3

      B.     Auction of Sentry's Customer Claim and Execution of the Trade
Confirmation ........................................................................................4

      C.     The Foreign Representative's Conduct After Execution of the Trade
Confirmation ........................................................................................5

      D.     The BVI Court's Approval of the Trade Confirmation ...........................6

      E.     The Bankruptcy Court's Denial Of The Application................................7

      F.     This Appeal And The BVI Court's Costs Decision..................................9

SUMMARY OF ARGUMENT ...............................................................................10

ARGUMENT ........................................................................................................11

I.      THE BANKRUPTCY COURT CORRECTLY FOUND THAT THE CLAIM IS
NOT PROPERTY LOCATED IN THE UNITED STATES...............................11

      A.     The Interest In Property That Was Transferred Was Sentry's Ownership
Interest In The Claim ...........................................................................11

      B.     Both The Claim And Sentry's Interest Therein Are Located In The BVI.............13

II.     THE CHAPTER 15 COURT CORRECTLY FOUND THAT PRINCIPLES OF
COMITY REQUIRE DEFERENCE TO THE BVI COURT...........................16

III.    FOUR ADDITIONAL GROUNDS INDEPENDENTLY SUPPORT THE
BANKRUPTCY COURT'S RULING. ...............................................................19

IV.    ALTERNATIVELY, THE APPEAL SHOULD BE DISMISSED BECAUSE
        THE BVI COURT HAS DENIED PERMISSION TO THE FOREIGN
        REPRESENTATIVE TO PROCEED WITH IT ............................................................24

CONCLUSION..........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>Cases</u>

*In re Bernard L. Madoff Inv. Sec. LLC*,
424 B.R. 122 (Bankr. S.D.N.Y. 2010) ..................................................................12

*CSL Australia Pty. Ltd. V. Britannia Bulkers PLC*,
2009 WL 2876250 (S.D.N.Y. Sept. 8, 2009).........................................................15

*In re Commodore Intern., Ltd.*,
242 B.R. 243 (Bankr. S.D.N.Y. 1999)..................................................................24

*Communicators PCS Ltd. Partnership v. Gabriel Capital, L.P.*,
394 B.R. 325 (S.D.N.Y. 2008)..............................................................................13

*In re Dana Corp.*,
412 B.R. 53 (S.D.N.Y. 2008)..................................................................................2

*DiLaura v. Power Auth. of State of N.Y.*,
982 F.2d 73, 76 (2d Cir. 1992) .............................................................................16

*In re Dura Auto. Sys. Inc.*,
Bankr. LEXIS 2764 (Bankr. D. Del. Aug. 15, 2007) ...........................................22

*In re Elpida Memory, Inc.*,
2012 WL 6090194 (Bankr. D. Del. Nov. 12, 2012) ..............................................17

*In re Empresa de Transportes Aero del Peru, S.A.*,
263 B.R. 367 (S.D.Fla. 2001) ...............................................................................24

*In re Fairfield Sentry, Ltd.*,
440 B.R. 60 (Bankr. S.D.N.Y. 2010)................................................................4, 21

*In re Fairfield Sentry Ltd.*,
484 B.R. 615 (Bankr. S.D.N.Y. 2013) ........................................................ *passim*

*In re Fairfield Sentry Ltd.*,
458 B.R. 665 (S.D.N.Y. 2011)........................................................................10, 16

*In re Glitnir Banki HF*,
2011 WL 3652764 (Bankr. S.D.N.Y. 2011)..........................................................22

*Hilton v. Guyot*,
159 U.S. 113 (1895)...............................................................................................16

*In re Integrated Resources, Inc.*,
147 B.R. 650 (S.D.N.Y. 1992)...............................................................................23

*In re Iroquois*,
284 B.R. 28 (Bankr. W.D.N.Y. 2002) ...............................................................8, 14

*In re JSC BTA Bank*,
    434 B.R. 334 (Bankr. S.D.N.Y. 2010) ................................................................20

*In re Lavigne*,
    114 F.3d 379 (2d Cir. 1997) ...............................................................................22

*In re Maxwell Communication Corp.*,
    93 F.3d 1036 (2d Cir. 1996) .........................................................................17, 18

*Severnoe Sec. Corp. v. London and Lancashire Insurance Co.*,
    255 N.Y. 120 (N.Y. 1931) .......................................................................8, 13, 14

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) (cited in Application at ¶ 62).................................................20

*The Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*,
    973 F.2d 141 (2d Cir. 1992).................................................................................22

### Statutes

11 U.S.C. § 103(a) ...............................................................................................17

28 U.S.C. § 158(a)(1) .............................................................................................1

11 U.S.C. § 363 .............................................................................................*passim*

11 U.S.C. § 363(b) ........................................................................................*passim*

11 U.S.C. § 363(c) ................................................................................................21

11 U.S.C. § 547 ....................................................................................................17

11 U.S.C. § 1121(a)(5) ..........................................................................................21

11 U.S.C. § 1502(8) .......................................................................................11, 15

11 U.S.C. § 1517(b)(1) ...........................................................................................4

11 U.S.C. § 1520 ............................................................................................7, 20

11 U.S.C. § 1520(a)(2) ..................................................................................*passim*

11 U.S.C. § 1520(a)(3) .........................................................................1, 19, 20, 21

11 U.S.C. § 1521(a)(5) ...............................................................................1, 4, 11

**Rules**

Federal Rules of Bankruptcy Procedure Rule 8013.......................................................................2


**Other Authority**

*Krys v. Stichting Shell Pensioenfonds,*
    HCVAP 2011/036, Eastern Caribbean Supreme Court in the Court of Appeal,
    September 17, 2012 ............................................................................................................15

BVI Insolvency Act of 2003, § 175    ...........................................................................15

## STATEMENT REGARDING APPELLATE JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(a)(1) to consider the appeal from the decision of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in *In re Fairfield Sentry Limited*, 484 B.R. 615, 617 (Bankr. S.D.N.Y. 2013) (the "Opinion").

## STATEMENT OF ISSUES ON APPEAL

1.      Whether the Bankruptcy Court correctly concluded that the sale to Farnum Place, LLC ("Farnum") of the customer claim (the "Claim") of Fairfield Sentry Limited ("Sentry") asserted against Bernard L. Madoff Investment Securities LLC ("BLMIS") is not "a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States" pursuant to 11 U.S.C. § 1520(a)(2).

2.      Whether the Bankruptcy Court correctly applied principles of comity in denying the Foreign Representative's "Application for Consideration of SIPA Claim Assignment Transaction Contemplated by Trade Confirmation" (the "Application") in deference to the approval of a trade confirmation (the "Trade Confirmation") by the High Court of Justice, Commercial Division, in the British Virgin Islands (the "BVI Court") in the "foreign main proceeding."

3.      Whether any of four additional grounds identified by Farnum below independently support affirmance of the Bankruptcy Court's Opinion.[1]

4.      Whether this Court should dismiss the Appeal when the BVI Court has not granted the Foreign Representative permission to proceed with this Appeal.

---

[1]      The four grounds are that : (a) 11 U.S.C. §§ 1520(a)(2) and 1520(a)(3) do not mandate the application of section 363; (b) the Foreign Representative had already obtained from the Bankruptcy Court the "entrustment power" under 11 U.S.C. § 1521(a)(5) to transfer the Claim to Farnum; (c) the sale of the Claim was an "ordinary course" transaction under 11 U.S.C. § 363; and (d) the Sale satisfied section 363(b) standards under any circumstances.

## APPLICABLE STANDARDS OF APPELLATE REVIEW

Rule 8013 of the *Federal Rules of Bankruptcy Procedure* provides that, "[o]n an appeal [from the bankruptcy court,] the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  This Court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*.  *In re Dana Corp.*, 412 B.R. 53, 56 (S.D.N.Y. 2008).  The Court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below."  *Id*.

## STATEMENT OF THE CASE

This appeal arises from a detailed and well-reasoned decision of the Bankruptcy Court (Lifland, J.) denying an application by Foreign Representative Kenneth Krys (the "<u>Foreign Representative</u>") seeking disapproval of  the sale to Farnum of Sentry's $230 million SIPA claim against BLMIS—a sale that had already been found valid by the BVI Court after a three-day evidentiary hearing involving the testimony of multiple witnesses and experts.  The Bankruptcy Court based its decision both on interpretation of the Bankruptcy Code and principles of comity.

The Application stemmed from what the Bankruptcy Court aptly called "a pure and simple case of seller's remorse."  *In re Fairfield Sentry*, 484 B.R. at 617.   In December 2010, the Foreign Representative contracted, pursuant to the Trade Confirmation, to sell to Farnum the Claim at a price equal to 32.125% of the eventual "allowed" amount of the Claim.  Before agreeing to sell, the Foreign Representative conducted a vigorous auction for the Claim and sought (and obtained) the approval of a committee of shareholders of Sentry.  Because the market for customer claims against BLMIS increased after execution of the Trade Confirmation, the Foreign Representative attempted to renege on the contract, forcing Farnum to seek relief from the BVI Court to compel the Foreign Representative to honor the Trade Confirmation.  The

2

Foreign Representative argued that, as a matter of BVI insolvency law and New York law, he was free to disregard the Trade Confirmation, that Bankruptcy Court approval was necessary, and that the Bankruptcy Court would never approve the Trade Confirmation.  In March 2012, the BVI Court issued a 14-page decision (the "BVI Judgment"), rejecting most of the arguments asserted by the Foreign Representative.  The BVI Court, however, granted permission to the Foreign Representative to proceed in the United States on whether any United States Bankruptcy Court approval was necessary.

In proceeding to file the Application with the Bankruptcy Court seeking to disapprove the Trade Confirmation, the Foreign Representative asserted that section 1520(a)(2) of the Bankruptcy Code mandated disapproval of the Trade Confirmation even though the BVI Court— the court of the "foreign main proceeding" and the court in which all proceeds of the Claim would be distributed to Sentry's stakeholders—had approved the Trade Confirmation.  The Bankruptcy Court rejected that effort, finding (1) that Bankruptcy Code section 1520(a)(2) did not apply because the property being transferred—Sentry's interests in its Claim against BLMIS—was located in the British Virgin Islands, and (2) that principles of comity counseled deference to the BVI Court's approval of the Trade Confirmation.  In light of those rulings, the Bankruptcy Court did not reach other independently dispositive grounds urged by Farnum for denying the application.

## FACTUAL BACKGROUND

### A.   Sentry's Liquidation in the BVI "Foreign Main" Proceeding and Commencement of the Chapter 15 Case

Until December 2008, Sentry's primary business was investment in BLMIS.  When BLMIS was exposed as a Ponzi scheme in December 2008, Sentry's "business" permanently changed to liquidation of its assets.  Bankr. Ct. RJN Ex. "C" (¶ 5) [Bankr. Ct. Dkt. No. 662]; *see*

3

*also id.* (¶ 45).  On July 21, 2009, the BVI Court placed Sentry into liquidation, and the Foreign

Representative was appointed as one of Sentry's liquidators.  Krys Dec. ¶ 3 [Bankr. Ct. Dkt. No.

591].

Under BVI insolvency law and the order appointing the Foreign Representative, BVI

court approval is required for the Foreign Representative's exercise of some but not other

powers.  For example, to take action in the United States, the Foreign Representative must first

obtain approval (or sanction) from the BVI Court.  But the BVI Court need *not* approve exercise

of the power "to sell or otherwise dispose of property of the Debtors."  Bankr. Ct. RJN Exs. "B"

(Ex. A attached thereto) and "D" (¶¶ 14(i), 15) [Bankr. Ct. Dkt. No. 662].

On June 14, 2010, the Foreign Representative filed a petition with the Bankruptcy Court

for recognition under Chapter 15 of the BVI Proceeding as a foreign main proceeding, or in the

alternative, as a foreign non-main proceeding.  The petition sought, among other things, the

power of "entrustment" pursuant to 11 U.S.C. § 1521(a)(5).  *Id.*, Ex. "B."  On July 22, 2010, the

Bankruptcy Court entered an order recognizing the BVI Proceeding as a foreign main proceeding

and granting relief under sections 1517(b)(1) and 1521, including "entrustment" relief.  440 B.R.

60, 67 (Bankr. S.D.N.Y. 2010).  On appeal, this Court and the Second Circuit affirmed.  *See* 10

CIV. 7311 GBD, 2011 WL 4357421 (S.D.N.Y. Sept. 16, 2011) *aff'd*, 11-4376, 2013 WL

1593348 (2d Cir. Apr. 16, 2013).

B.    **Auction of Sentry's Customer Claim and Execution of the Trade Confirmation**

Prior to the commencement of the Chapter 15 case, Sentry filed the Claim in BLMIS's

proceeding under the Securities Investor Protection Act ("SIPA").  During the summer of 2010,

notwithstanding that the Claim was disputed by the BLMIS trustee and was of uncertain (if any)

value, the Foreign Representative began receiving bids to acquire the Claim and, on or about

4

September 20, 2010, commenced steps to sell the Claim.  Krys Decl., ¶ 10 [Bankr. Ct. Dkt. No. 591].  From September 27, 2010, to mid-November 2010, the Foreign Representative conducted a competitive auction for the Claim, seeking to enter into a trade with the bidder offering the most favorable price and terms to Sentry.  *Id.*

The Foreign Representative ultimately selected Farnum as the winning bidder, and the parties drafted two documents:  the Trade Confirmation and a companion assignment agreement.  Neither document made any reference to Bankruptcy Code section 363 or the Chapter 15 Court or proceeding.[2]  *See* Shelley Decl. Exs. "4"-"14"; Pak Decl. ¶¶ 7-15; Janover Decl. ¶ 8-17 [Bankr. Ct. Dkt. Nos. 657, 660, 661].[3]  The Trade Confirmation was executed on December 13, 2010.  Krys Decl., Ex. "B" [Bankr. Ct. Dkt. No. 591].

### C.    The Foreign Representative's Conduct After Execution of the Trade Confirmation

For months following execution of the Trade Confirmation, the Foreign Representative's conduct demonstrated his belief that only BVI Court approval of the sale was necessary.  *See, e.g.* Shelley Decl. Ex. "22" [Bankr. Ct. Dkt. No. 657].  For example, in May 2011, the Foreign Representative entered into a settlement agreement with the BLMIS trustee (the "<u>Madoff Settlement</u>") that, among other things, allowed the Claim in the amount of $230 million, subject to the Foreign Representative transferring cash to the BLMIS trustee.  Bankr. Ct. RJN Ex. "A" [Bankr. Ct. Dkt. No. 662].  The Madoff Settlement provided for numerous transfers of property of Sentry's estate and Sentry's interest in property, yet expressly provided that it was subject

---

[2]    While negotiating with Farnum, the Foreign Representative was negotiating with a competing bidder, who did insist on Bankruptcy Court approval under Chapter 15 as an express contractual condition.  Shelley Decl. Exs. "15"- "17" [Bankr. Ct. Dkt. No. 657].  Thus, at the time of the negotiation of the Trade Confirmation, the Foreign Representative was aware of how to draft a provision requiring Bankruptcy Court approval.

[3]    The Foreign Representative also tried to negotiate for a "fiduciary out" that would have granted the Foreign Representative the discretion to not honor the Trade Confirmation, but that was rejected.  Shelley Decl. Exs. "5"-"7" [Bankr. Ct. Dkt. No. 657].

*only* to approval by the BVI Court and the court overseeing the BLMIS SIPA proceeding; it set forth no requirement for Chapter 15 approval.  *Id.*  One Sentry stakeholder filed an objection in the Chapter 15 Court.  In response, the Foreign Representative took the position that the stakeholder, Morning Mist, had no standing to oppose the settlement in the SIPA Proceeding, the only United States proceeding where approval was sought, but instead had to present its objections to the BVI Court.  *Id.*, Ex. "G"; *see also Fairfield*, 484 at 625.

### D.       The BVI Court's Approval of the Trade Confirmation

Farnum repeatedly attempted to confer with the Foreign Representative concerning moving forward with BVI Court approval of the Trade Confirmation, but the Foreign Representative refused to take any further action with respect to the Trade Confirmation. Shelley Decl. Ex. "21" [Bankr. Ct. Dkt. No. 657].  As a result, on October 27, 2011, Farnum filed an application with the BVI Court to compel the Foreign Representative to seek approval of the Trade Confirmation.  Krys Decl., Ex. "E" [Bankr. Ct. Dkt. No. 591].  The trial occurred on March 13-15, 2012 before the BVI Court.  *Id.*, ¶ 22.  The Foreign Representative argued that the Trade Confirmation contractually required Chapter 15 approval or that New York state law incorporated application of Section 363, and that the Trade Confirmation was not in the best interests of the BVI estate.  *Id.*, Ex. "E."  The Foreign Representative also argued that the BVI Court should defer ruling until after the Chapter 15 Court determined the applicability and effect of section 363.  *Id.*

In a detailed written opinion, the BVI Court rejected the Foreign Representative's positions and approved the terms of the Trade Confirmation.  *See* BVI Judgment at ¶ 51 [Bankr. Ct. Dkt. No. 591, Ex. "G"] ("I therefore approve the terms and conditions of the Trade Confirmation, from which it follows that I also approve the assignment to Farnum of Sentry's claim in the SIPA liquidation of BLMIS at the price stipulated for in the Trade Confirmation.").

The BVI Court found that the Trade Confirmation "was negotiated at arm's length by sophisticated parties with full awareness of the market and with the benefit of skilled professional advice." *Id.* at ¶ 50.  The BVI Court further found that the fact that that market price of customer claims might subsequently increase was irrelevant.  *Id.*

The BVI Court also held that the Foreign Representative could not continue to refuse to proceed with the Trade Confirmation as he had done for over a year.  The BVI Court directed the Foreign Representative to "take the necessary steps to bring before the US Bankruptcy Court the question of approval (or non-approval) by that Court of the Trade Confirmation."  *Id.* at ¶ 51.

      **E.**      **The Bankruptcy Court's Denial Of The Application**

On April 18, 2012, the Foreign Representative filed the Application requesting that the Bankruptcy Court disapprove the sale of the Claim to Farnum.  [Bankr. Ct. Dkt. No. 590].  The Foreign Representative argued that section 1520(a)(2) of the Bankruptcy Code applied automatically and required the Bankruptcy Court to consider whether the Trade Confirmation could be approved under Bankruptcy Code section 363(b).  [Bankr. Ct. Dkt. No. 593].

Farnum opposed, arguing that Bankruptcy Code section 363 did not require disapproval of the Trade Confirmation because: (i) the Bankruptcy Court had already entrusted the Foreign Representative with the power to dispose of all Sentry assets located within the United States; (ii) principles of comity required the Bankruptcy Court to defer to the BVI Court's approval of the Trade Confirmation; (iii) the Claim was not an interest in property located within the United States; (iv) the sale of the Claim was an ordinary course transaction for Sentry, in liquidation; (v) section 1520 does not mandate Bankruptcy Court approval of sales of property under section 363(b); and (vi) even if the Bankruptcy Court was to evaluate the Trade Confirmation under section 363, the Trade Confirmation would satisfy the business judgment test on the date the agreement was entered.  [Bankr. Ct. Dkt. No. 683].

On January 9, 2013, the Bankruptcy Court held a lengthy hearing on the Application and denied the Application from the bench, stating that "comity applies very strongly here" and "when it comes to the location of the intangible claim, this is essentially a location in the BVI." [Bankr. Ct. Dkt. No. 722] (1/9/13 Tr. at 111:6-12).  The following day, on January 10, 2013, the Bankruptcy Court issued a written opinion relying on two of the grounds presented by Farnum.[4]

*First*, the Bankruptcy Court held that section 1520(a)(2) does not apply to the transfer of the Claim, and that review under section 363 is not warranted, "because the [Claim] is not within the territorial jurisdiction of the United States," and instead "constitutes an intangible asset located in the BVI."  *Id.* at 618, 623-25 (internal quotations omitted).  The Bankruptcy Court held that "the property in question is the [Claim] and Sentry's ownership rights therein," and that the Claim "constitutes a 'general intangible' under New York law, which the parties agree is applicable here."  *Id.* at 623-24.  To determine the proper location of the Claim, the Bankruptcy Court applied the *Servoce* test and *In re Iroquois*, 284 B.R. 28 (Bankr. W.D.N.Y. 2002), which employ a "common sense appraisal of the requirements of justice and convenience" to determine the situs of intangible property.  *Id.* at 624-25.  The Bankruptcy Court found that "convenience and common sense dictate … that the SIPA Claim is located with the debtor in the BVI."  *Id.* at 625.  The Bankruptcy Court found that, among others, the following facts supported its holding: the sale of the Claim is "by a BVI incorporated entity, being administered by the BVI Court"; the Foreign Representative "was appointed by, and must answer to, the BVI Court"; the Bankruptcy Court  has recognized that the Foreign Representative "is deemed to have custody and control of all the assets of Sentry under the BVI Insolvency Order"; and the Foreign Representative "conducts the business of administering Sentry's assets in the BVI."  *Id.* at 625.

---

[4]	Having reached a resolution of Foreign Representative's "Hail Mary, last-ditch effort," *Fairfield Sentry*, 484 B.R. at 618, based on the issues of location of property and comity, the Bankruptcy Court did not address the additional arguments raised by Farnum.

*Second*, the Bankruptcy Court determined that section 363 review of the Trade Confirmation "would contravene the origins of Chapter 15 and the critical concept of comity embedded therein." *Id.* at 618.  As one of the drafters of Chapter 15, Judge Lifland explained that "comity has been codified in Chapter 15 to emphasize its primacy by inserting it in the preamble of section 1507(b) of the Code." *Id.* at 627.  The Bankruptcy Court found that "the transaction at issue is BVI-centric" and that "comity dictates" deference to the BVI Judgment. *Id.* at 628.  Moreover, the Bankruptcy Court found that it lacked a meaningful interest in the disposition of the Claim both because the Bankruptcy Court had already approved the Settlement between Sentry and the BLMIS trustee and because the sale of the Claim involves no interests unique to the United States.  *Id.* at 627-28.  The Bankruptcy Court concluded that a failure to defer to the BVI Judgment in these circumstances "necessarily undermines the equitable and orderly distribution of a debtor's property by transforming a domestic court into a foreign appellate court where creditors are always afforded the proverbial 'second bite at the apple.'" *Id.* at 628.

### F.      This Appeal And The BVI Court's Costs Decision

The Foreign Representative filed a notice of appeal to this Court on January 22, 2013. On April 5, 2013, the Foreign Representative filed an opening brief, but did not disclose whether he had obtained permission from the BVI Court to proceed with this Appeal.  *See* D.E. No. 5.  As it turns out, the BVI Court has denied permission.  On March 5, 2013**,** the BVI Court held a hearing on whether Farnum was entitled to recover its fees and costs incurred in connection with the trial in March 2012 on approval of the Trade Confirmation.  In determining that Farnum had prevailed and was entitled to a full recovery of fees and costs, the BVI Court stated on the record that it had denied permission to the Foreign Representative to proceed with this Appeal, but that the Foreign Representative apparently has taken an appeal in the Eastern Caribbean Court of

Appeal.  *See* RJN filed concurrently herewith, Ex. A (3/5/13 Tr., *Matter of Fairfield Sentry Ltd. (in Liquidation)*, BVI Court) at 9:5-7.

## SUMMARY OF ARGUMENT

This Court should affirm the Bankruptcy Court's detailed and well-reasoned Order and Opinion. Affirmance will confirm the importance of respecting decisions of "foreign main proceeding" courts overseeing liquidations.  It will also ensure that liquidators in foreign main proceedings may not forum shop by trying to get a remote court—in this case, a U.S. bankruptcy court in an ancillary Chapter 15  proceeding—to second-guess the primary court's decisions.

*First*,  the Bankruptcy Court correctly found that section 1520(a)(2) does not apply because the Trade Confirmation does not involve the transfer of an interest in property within the United States.  The law is clear that the Claim is an intangible asset, located in Sentry's place of incorporation.  *See In re Fairfield Sentry Ltd.*, 458 B.R. 665, 677 n.2 (Preska, J. S.D.N.Y. 2011).

*Second*, the Bankruptcy Court correctly applied principles of comity, which counsel that U.S. courts should defer to the approval of the Trade Confirmation by the BVI Court.  Sentry is a BVI company, and the Foreign Representative was appointed by, and must answer to, the BVI Court.  Under BVI law, once he was appointed, the Foreign Representative needed no further authorization to sell the Claim.  Any proceeds of the sale of the Claim will be administered in the BVI.  There are no interests (such as liens or intellectual property) unique to United States parties at issue.

*Third*, if the Court has any doubt as to the Bankruptcy Court's grounds for denying the Application, it should nonetheless affirm on any one of the additional independent grounds for denial of the Application raised by Farnum below:  (i) section 1520(a)(2) does not mandate the application of section 363 to all transfers of property located within the United States in a Chapter 15 case; (ii) the Foreign Representative did not require any *further* approval from the

10

Bankruptcy Court to sell the Claim to Farnum because it had already obtained the affirmative power of "entrustment" under section 1521(a)(5); (iii) even if section 1520(a)(2) applied (and it does not), section 363 would not apply because the contract to sell the Claim was an "ordinary course" transaction; (iv) even if the Bankruptcy Court conducted a plenary review of the sale, the business judgment standard would render the sale valid.

*Finally*, this Court may in the alternative choose to dismiss this appeal as the BVI Court has stated on the record that it did not authorize the Foreign Representative to undertake it.

## ARGUMENT

## I.  THE BANKRUPTCY COURT CORRECTLY FOUND THAT THE CLAIM IS NOT PROPERTY LOCATED IN THE UNITED STATES

Sections 363(b) or 1520(a)(2) of the Bankruptcy Code apply only to "a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States." *See* 11 U.S.C. §1520(a)(2).  In turn, Section 1502(8) of the Bankruptcy Court provides, in pertinent part, that intangible property is "within the territorial jurisdiction of the United States" when it is "deemed under applicable nonbankruptcy law to be located within that territory, including any property subject to attachment or garnishment that may properly be seized or garnished by an action in a Federal or State court in the United States."  11 U.S.C. § 1502(8).  As the Bankruptcy Court correctly determined, the sale of the Claim is not a transfer of an interest "within the territorial jurisdiction of the United States" because the Claim, Sentry's interest in the Claim and the Trade Confirmation are located within the territorial jurisdiction of the BVI.

### A.  The Interest In Property That Was Transferred Was Sentry's Ownership Interest In The Claim

As the Bankruptcy Court correctly held, "the SIPA Claim Sale contemplates the transfer of Sentry's ownership interest in its rights against BLMIS."  *See Fairfield*, 484 B.R. at 623-24 (citing Trade Confirmation at 1 (providing for the sale of the "Claim," which is defined as "[a]ll

Seller's rights, title and interest in and to Seller's claims against BLMIS in the Proceedings" but excepting future indemnity claims).  Thus, for purposes of applying section 1520(a)(2), the "interest" at issue is Sentry's ownership interest in the Claim, and the "property" at issue is the Claim, and not the BLMIS Fund.[5]

The Foreign Representative argues (Appellant Brief at 15) that Sentry's ownership in the Claim should be considered, for purposes of section 1520(a)(2), an interest in the BLMIS Fund, which itself is located in the United States.  That is incorrect.  The plain language of the Trade Confirmation makes clear that it is transferring Sentry's ownership rights (the interest) in the Claim (the property).  Moreover, the Claim does not represent a property interest in the BLMIS Fund.  Sentry could not transfer to Farnum any portion of the BLMIS Fund, because Sentry does not own any portion of the BLMIS Fund.

It makes no difference that, as the Foreign Representative suggests (Appellant Brief at 15-16) "the holder of an allowed SIPA customer claim is entitled to receive a ratable share of 'customer property,'"—here, a ratable share of "the BLMIS Fund."  The right to receive a distribution of a pro rata share of a fund is not the same as a property interest (or *in rem* claim) in that fund.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010) *aff'd*, 654 F.3d 229 (2d Cir. 2011)) (the customer property fund in a SIPA case is comprised of assets that "*are not ascribable to individual customers*, but rather are distributed pro rata to the extent of a customer's Net Equity") (emphasis added)).  For example, unsecured creditors share pro rata in the unencumbered assets of a debtor, but they do not have a property

---

[5]     Contrary to the Foreign Representative's assertion (Appellant Brief at 11)  the Bankruptcy Court *did* "resolve the parties' threshold dispute as to whether the territorial trigger is tethered to the word 'property' or the word 'interest,'" the Court held that the property in question "is the allowed SIPA Claim and Sentry's ownership rights therein."  *Fairfield Sentry*, 484 B.R. at 623-24.  And contrary to the Foreign Representative's assertions (Appellant Brief at 12), Farnum does not argue that the "interest" must be located in the United States as opposed to the "property" but rather that the Claim itself is the relevant  "property" under section 1520(a)(2).  In any event, the dispute is immaterial here because *both* the Claim and Sentry's ownership rights in that claim are located in the BVI.

interest in those assets.  Moreover, to the extent that Sentry had any property interest in particular cash or securities held by BLMIS prior to the SIPA Proceedings, SIPA altered those property interests by providing Sentry with a claim against BLMIS that is to be satisfied from the customer fund.  *See* Farnum Objection at 19 [Bankr. Ct. Dkt. No. 683] (citing *In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353, 374 (D.N.J. 1986)).  Thus, the Foreign Representative is incorrect to assert that the Claim is an interest in the BLMIS Fund.[6]

### B.     Both The Claim And Sentry's Interest Therein Are Located In The BVI

Under New York law, which both parties agree applies, the Claim constitutes a "general intangible."  Contingent rights to payment, such as a debtor's claims and causes of action, are general intangibles.  *See Fairfield*, 484 B.R. at 624 (citing *Communicators PCS Ltd. Partnership v. Gabriel Capital, L.P.*, 394 B.R. 325, 337 (S.D.N.Y. 2008)).  Thus, the interest in property that is being sold is Sentry's ownership interest in the Claim, and the only property to which the applicability of section 363 should be measured, is Sentry's ownership interest in the Claim and the Claim itself.

The Bankruptcy Court properly applied the flexible test for determining the situs of intangible property set forth in *Severnoe Sec. Corp. v. London and Lancashire Insurance Co.*, 255 N.Y. 120 (N.Y. 1931) (Cardozo, J.), which has been adopted by many New York courts and which the Foreign Representative referred to in his Application.[7]  In *Severnoe*, the New York Court of Appeals held that the legal situs of an intangible should be guided by "a common sense

---

[6]      In an attempt to bolster his argument that the Claim is located in the United States, the Foreign Representative also asserts that "certain interim distributions on the SIPA Claim, to which Farnum would be entitled under the Trade Confirmation . . . are being held in an escrow account in New York."  Appellant Brief at 16-17, n. 19.  But the Foreign Representative testified at his deposition on June 6, 2012, that the first distribution on the Claim was held "in a separate bank account in BVI."  *See* Farnum Objection at 19 [Bankr. Ct. Dkt. No. 683] (citing Krys Dep. at 294:1-7, Shelley Decl. Ex. 1 [Bankr. Ct. Dkt. No. 657]).  The Foreign Representative should not be permitted to manufacture facts to support his argument as to the situs of the Claim *after* this litigation arose by causing certain of the distributed funds to be parked in New York pending resolution of this matter.

[7]      *See* Application at 23 [Bankr. Ct. Dkt. No. 593].

appraisal of the requirements of justice and convenience." 255 N.Y. at 123-24.  As the Bankruptcy Court noted, the determination of situs is "highly contextual," calls for "practical judgment," and focuses on, among other things, "ease of administration and [] equity." *Fairfield*, 484 B.R. at 624.  Here, the Bankruptcy Court properly determined that all of the relevant facts point to the BVI being the situs of the Claim.  *Id.* at 625.

As set forth above (*see supra* Factual Background § E), in ruling on this issue, the Bankruptcy Court properly focused on the substantial and material connections between the BVI and the Claim, all of which bolster the simple fact that the Foreign Representative manages and is "deemed to have custody and control of," all of Sentry's assets, including the Claim, in the BVI and that those assets and Sentry's business, are being administered in the BVI.  *See Fairfield*, 484 B.R. at 625.  The Bankruptcy Court further noted that the Foreign Representative himself emphasized this point in arguing that the Bankruptcy Court was not the proper forum to examine the Madoff Settlement:  "'The BVI court oversees the [Chapter 15 Debtors'] activities and administers [their] estates . . . . That is the proper venue for dealing with the reasonableness of this settlement under applicable law in connection with the fiduciary duties of the Fairfield liquidators.'"  *Id.* at 625 (quoting Transcript Regarding hearing Held on June 7, 2011, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. Dkt. No. 93) at 14:4-11) (alterations in original).  In light of these undisputed facts, the Bankruptcy Court properly relied upon *Severnoe* and its progeny, including *In re Iroquois Energy Mgmt., LLC*, 284 B.R. 28 (Bankr. W.D.N.Y. 2002), in determining that the Claim is located in the BVI.  *Fairfield*, 484 B.R. at 625.[8]

---

[8]        The Foreign Representative's attempt to distinguish *Iroquois* (Appellant Brief at 20 n. 21) misses the mark. Here, as in *Iroquois*, the relationship underlying the intangible asset is irrelevant because no dispute exists with respect to that relationship.  *Iroquois*, 284 B.R. at 31-32.  The current dispute is not about the relationship between Sentry and the BLMIS SIPA proceeding, but rather about the Trade Confirmation and the Foreign Representative's management of Sentry's assets.

The Bankruptcy Court also correctly rejected the Foreign Representative's belated argument that the Claim is located within the territorial jurisdiction of the United States pursuant to section 1502(8) because it is "property subject to attachment or garnishment that may properly be seized or garnished by an action in a Federal or State court in the United States."[9]  The Bankruptcy Court ruled that the Claim could not be seized or garnished in the United States because the stay under BVI law prohibits any attachment or garnishment of Sentry's assets.  *See Fairfield*, 484 B.R. at 625 n. 14 (holding that, "even if the [Sentry] Claim were located in the United States for attachment purposes, it cannot be ''properly seized or garnished'' because it is stayed by the BVI Court in accordance with BVI law . . .") (citing BVI Insolvency Act of 2003, § 175).[10]  The Foreign Representative offers no answer to this ruling, nor could he, for he took the same position when he sued in the BVI to restrain a creditor (Shell) from continuing garnishment/attachment proceedings against a different Sentry asset in a Dutch Court.  *See* RJN filed concurrently, Ex. "B" (*Krys v. Stichting Shell Pensioenfonds*, HCVAP 2011/036, Eastern Caribbean Supreme Court in the Court of Appeal, September 17, 2012 (the "BVI Shell Decision")).  Moreover, courts have held that an attachment that would be void or voidable under the applicable foreign law (*e.g.*, the law of the place of the main proceeding) will be similarly void or voidable in the United States.  *See e.g. CSL Australia Pty. Ltd. v. Britannia Bulkers PLC*, 08 CIV. 8290 (PKL), 2009 WL 2876250 (S.D.N.Y. Sept. 8, 2009) (vacating attachments pursuant to Chapter 15 to prevent creditor's effort to  "make an end-run around the Danish Court's explicit proscription against disposition of a debtor's property outside of the

---

[9]        As the Bankruptcy Court noted, the Foreign Representative raised this argument for the first time in its Reply.  *See Fairfield*, 484 B.R. at n. 14.

[10]        Section 175 of the BVI Insolvency Act of 2003 provides, in pertinent part, that "the liquidator has custody and control of the assets of the company," and that "unless the Court otherwise orders, no person may (i) commence or proceed with any action or proceeding against the company or in relation to its assets, or (ii) exercise or enforce, or continue to exercise or enforce any right or remedy against the assets of the company."

bankruptcy proceeding"). The Foreign Representative's argument that the Claim is within the territorial jurisdiction of the United States because it could be seized or garnished here is thus unfounded.

In any event, this Court has already held that all of Sentry's intangible assets, including Sentry's claims that are general intangibles, are located in the BVI. *See Fairfield*, 458 B.R. 665, 678 (S.D.N.Y. 2011) (Preska, J.) (holding that "the actions are intangible assets, which are located where the plaintiff is domiciled," and "[h]ere, Plaintiffs are domiciled in the BVI, so the intangible assets are located there"). This ruling is law of the case. *See e.g.*, *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotations omitted). Thus, Sentry's rights against BLMIS—which, like the lawsuits at issue in this Court's decision in *Fairfield*, constitute general intangibles—are also located in the BVI.

## II.    THE CHAPTER 15 COURT CORRECTLY FOUND THAT PRINCIPLES OF COMITY REQUIRE DEFERENCE TO THE BVI COURT

As an independently sufficient ground for denying the Application, the Bankruptcy Court correctly concluded that long-standing, deeply ingrained principles of international comity[11] counseled in favor of deference to the BVI Court's ruling upholding the enforceability of the Trade Confirmation. Each of the Foreign Representative's challenges to that ruling misses the mark.

*First,* the Foreign Representative argues that the doctrine of international comity is not applicable to "automatic" provisions in the Bankruptcy Code. But that argument ignores decades

---

[11]    "Comity [is] 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).

of Second Circuit precedent concerning the doctrine of comity, *see* Farnum Objection, at 32-37,[12] and the case on which the Foreign Representative relies, *In re Maxwell Communication Corp.*, 93 F.3d 1036 (2d Cir. 1996), actually reached a contrary conclusion.

In *Maxwell*, the debtor was an English company that had filed a Chapter 11 petition in this district, followed the next day by a petition in the High Court of Justice in London seeking an administration order. *Maxwell*, 93 F.3d at 1041. The administrators appointed in the English proceeding commenced an action in the U.S. bankruptcy court seeking to utilize Bankruptcy Code section 547 to avoid certain payments the debtor had made to three banks. Although the administrators had access to avoidance powers under English law, they elected to commence proceedings in the United States because of a higher burden of proof under English law.

The defendant banks moved to dismiss the suit on the grounds that (i) the application of Bankruptcy Code section 547[13] to the transactions in question would violate the "presumption against extraterritoriality" and (ii) international comity precluded application of the Bankruptcy Code to these transfers. *Id.* at 1043-44. The bankruptcy court granted the motion, and the district court and Second Circuit affirmed, *id.* at 1044, 1055, concluding that "England has a much closer connection to these disputes than does the United States," *id.* at 1051. The Second Circuit noted that the debtor was incorporated under the laws of England, and that the administrators, who had been appointed by the English court, provided the debtor's corporate

---

[12]     The Foreign Representative also relies on a recent bankruptcy case from the District of Delaware for the notion that comity only applies to discretionary Bankruptcy Code provisions. *See* Appellant Brief at 23 (citing *In re Elpida Memory, Inc.*, 2012 WL 6090194). The Bankruptcy Court considered, and properly rejected, the approach suggested in *Elpida*. *See Fairfield*, 484 B.R. at 626, n.15. Moreover, as set forth in the Opinion, unlike in this case, the *Elpida* court had previously entered an order prohibiting the foreign representative from selling any assets absent approval by the bankruptcy court of a motion filed pursuant to Bankruptcy Code section 363. *Id. Elpida* thus is inapposite.

[13]     Under Bankruptcy Code section 103(a), Bankruptcy Code section 547 is "automatically" applicable in a case under chapter 11. 11 U.S.C. § 103(a) (stating that "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title").

governance.  *Id.* at 1051.  The Court stated that dismissal of the U.S. suit would not absolve the

defendant banks from all potential preference liability, as a parallel insolvency proceeding was

ongoing in another country.  *Id.* at 1052.  The Court declared that "[a]lthough a different result

might be warranted were there no parallel proceeding in England—and, hence, no alternative

mechanism for voiding preferences—we cannot say that the United States has a significant

interest in applying its avoidance law."  *Id.*  The Second Circuit added that "international comity

is a policy that Congress expressly made part of the Bankruptcy Code, and a decision consistent

with comity therefore furthers the Code's policy."  *Id.*  Accordingly, the Court concluded that,

"[b]ecause of the strong British connection to the present dispute, it follows that England has a

stronger interest that the United States in applying its own avoidance law to these actions."  *Id.*

The *Maxwell* ruling thus highlights the importance of deferring to the law of the country with the

paramount interest in the matter, even in the face of provisions whose applicability to a dispute

purports to be "automatic."  In the present case, that country is the BVI.

      Consistent with the reasoning in *Maxwell*, the Bankruptcy Court here correctly deferred

to the BVI Court on grounds of international comity, and declined to invalidate the Trade

Confirmation the BVI Court had already approved.  The Bankruptcy Court based this holding on

a careful analysis of a well-developed factual record,[14] which led it to conclude that "the

transaction at issue is BVI-centric for purposes of this Court's review.  Under such

circumstances, comity dictates that this Court defer to the BVI Judgment."  *Fairfield,* 484 B.R. at

628.

---

[14]     As the Bankruptcy Court correctly noted, Sentry is a BVI company, and the Liquidator was appointed by, and must answer to, the BVI court.  *Fairfield,* 484 B.R. at 625.  Under BVI law, once a liquidator is appointed, no further authorization is required for the liquidator to sell assets, and any proceeds of the sale of the Claim will be administered in the BVI.  There are no interests (such as liens or intellectual property) unique to United States parties at issue.

*Second,* the Foreign Representative argues (Appellant Brief at 24) that the Bankruptcy Court's comity analysis is mere *dicta*. That is incorrect, for the Bankruptcy Court clearly concluded, as an alternative holding, that the dispute was "BVI-centric" such that comity requires deference. In light of the record as a whole, there is no doubt that the Bankruptcy Court considered and expressly rejected the Foreign Representative's arguments (set forth in briefs and oral argument) that comity does not apply to Bankruptcy Code section 1520(a)(2).

*Third*, the Foreign Representative argues (Appellant Brief at 24) ) that comity is inapplicable because "there is no foreign court ruling to defer to," attempting to recast the relevant question from whether the Trade Confirmation is enforceable as determined by the BVI Court to whether the Trade Confirmation passes muster under Bankruptcy Code section 363. For purposes of comity analysis, however, it is irrelevant whether the BVI Court addressed this issue of U.S. Bankruptcy law. The enforceability of the Trade Confirmation was presented to the BVI Court, and the BVI Court ruled that the Trade Confirmation is enforceable as a matter of both New York law and BVI insolvency law, and that is the ruling that requires deference. *See* BVI Judgment, ¶¶ 40, 49 [Bankr. Ct. Dkt. No. 591, Ex. "G"]. The Bankruptcy Court properly declined to second-guess this ruling of the BVI Court based on principles of comity.

## III.   FOUR ADDITIONAL GROUNDS INDEPENDENTLY SUPPORT THE BANKRUPTCY COURT'S RULING.

As demonstrated above, this Court should affirm on both of the grounds identified by the Bankruptcy Court. If there were any doubt, however, Farnum presented four additional grounds, each of which independently supports affirmance.

*First*, section 363's application in this case is not mandatory because of the relationship between sections 1520(a)(2) and 1520(a)(3). The Foreign Representative's primary argument below was that section 1520(a)(2) applies automatically to require plenary application of

Bankruptcy Code section 363 in Chapter 15 cases.  The Foreign Representative focused solely on section 1520(a)(2), ignoring the rest of the statute.[15]   But section 1520(a)(2) must be read in conjunction with the other sections of 1520.  *See In re JSC BTA Bank*, 434 B.R. 334, 340 (Bankr. S.D.N.Y. 2010).  Section 1520(a)(3) provides that a foreign representative *may* exercise the rights and powers of a trustee under section 363.  Section 1520(a)(3)'s "rights and powers" clause would be superfluous if section 1520(a)(2) operated in the automatic manner advocated by the Foreign Representative because, by mentioning section 363, section 1520(a)(2) already contemplates that the "rights and powers" apply to the transfer of a property located in the United States.  It is a well-settled rule of statutory construction that no portion of a statute should be rendered superfluous.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cited in Application at ¶ 62).

    The only way to reconcile section 1520(a)(2)'s provision that section 363 applies to transfers with section 1520(a)(3)'s provision that a foreign representative *may* exercise rights and powers under section 363 (which necessarily includes the right and power to transfer property), is by reading the entire statute to provide that the foreign representative has the rights granted under section 1520 *if, but only if, the foreign representative* believes it is necessary to invoke

---

[15]    Bankruptcy Code section 1520(a) provides:

> (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

> (2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate;

> (3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

> (4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520.

them.  The relationship between sections 1520(a)(2) and 1520(a)(3) explains why, prior to the Application, the Foreign Representative never sought approval in the Chapter 15 case of any transfers, even though there were numerous transfers of interests in property that have far closer connections to the United States than the Claim or the Trade Confirmation.

*Second*, the Foreign Representative's "entrustment power" over all assets located in the United States, previously granted by the Bankruptcy Court, eliminated the need for any section 363 review of the Application .  The Bankruptcy Court has, pursuant to 11 U.S.C. § 1121(a)(5), already entrusted to the Foreign Representative "the administration or realization of" any property located in the United States.  *See In re Fairfield Sentry, Ltd.*, 440 B.R. 60, 67 (Bankr. S.D.N.Y. 2010).  Even though it is not typical for foreign representatives to obtain such relief, the Foreign Representative requested, and the Bankruptcy Court granted, this "entrustment" power, thus obviating the need to seek any further court approval for transactions arguably subject to section 1520(a)(2).  This explains why, prior to the Application at issue, the Foreign Representative *never* filed a motion seeking approval of any transfer of an interest in property in the United States, including the Trustee Settlement or the distribution from the Trustee (resulting in the cash proceeds of the Claim leaving the United States and being deposited into a BVI bank account) or the releases of any claims the Foreign Representative was prosecuting.

*Third*, the sale of the Claim was an "ordinary course" transaction and, therefore, under Bankruptcy Code sections 1520(a)(2) and 363, no court approval was required.  *See* 11 U.S.C. § 363(c).  The Foreign Representative's sale of the Claim occurred in the ordinary course of Sentry's business, which has been in liquidation since July 2009 and which had its business permanently altered to that of merely selling assets in December 2008. *See* Farnum's Objection at 43-51 [Bankr. Ct. Dkt. No. 683].  Under the well-established "horizontal" and "vertical" tests,

*see In re Lavigne*, 114 F.3d 379, 384-85 (2d Cir. 1997), the sale was an ordinary course of business transaction because the "business" of Sentry (in liquidation) at the Chapter 15 commencement date was to liquidate all assets.  Liquidators appointed in the BVI do *not* need court approval to sell or dispose of assets, as confirmed by the order appointing the Foreign Representative, *see* Bankr. Ct. RJN Ex. "D" [Bankr. Ct. Dkt. No. 662].  Any stakeholder of Sentry would reasonably expect the Foreign Representative to sell the Claim in order to pay liquidation expenses and provide a return to Sentry's stakeholders, especially where the Foreign Representative had declared his intent to liquidate all assets and had *not* sought, or required, Chapter 15 approval for the disposition of any assets, including with respect to the language of the Trade Confirmation itself.  *See* Farnum's Objection at 44-46 [Bankr. Ct. Dkt. No. 683] (discussing additional factors making such expectations reasonable).

*Fourth*, even if the Foreign Representative were correct that section 363 review were required, the Bankruptcy Court would have been correct to deny the relief requested nonetheless because the sale of the Claim satisfies the "business judgment" test under section 363(b). Whether a transaction passes muster under section 363 is not examined by fiduciary duty standards, but rather by the business judgment test.  *The Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (finding that section 363(b) was applicable because sound business judgment supported the sale of assets).[16]  To determine whether the business judgment test is met, "the court is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Dura Auto. Sys. Inc.*, No. 06-11202, 2007 Bankr. LEXIS

---

[16]    While the Foreign Representative vainly attempts to characterize this matter as one involving fiduciary duties, Chapter 15 does not impose any fiduciary duties on a foreign representative, because no estate is created.  *In re Glitnir Banki HF*, 2011 WL 3652764 *6 n.15 (Bankr. S.D.N.Y. 2011) ("The filing of a chapter 15 petition does not create an 'estate.'").

2764, at *272 (Bankr. D. Del. Aug. 15, 2007) (internal quotations omitted).  Once a debtor articulates a valid business justification, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).  There is no doubt that the Trade Confirmation was a sound business judgment when entered into—the BVI Court so found, and the Foreign Representative has admitted as much.  Shelley Decl. Ex. "18" [Bankr. Ct. Dkt. No. 657].

The Foreign Representative argued, both in the BVI Court and below, that the wisdom of the sale of the Claim should be evaluated based on subsequent events, not as of when the Trade Confirmation was executed.  But that would be true (if at all) only with respect to evaluating whether a *trustee's fiduciary duties* (which do not apply here) have been satisfied.  The test for evaluating the business judgment of the Foreign Representative is at the time of the execution of the Trade Confirmation, namely December 13, 2010.  Under the appropriate analysis, the sale of the Claim passes muster under section 363(b).  The Foreign Representative himself has already conceded that the price Farnum contracted to pay was eminently reasonable.  *See id.*  The price was obtained after several rounds of bidding and an extensive auction process that had the support of the Liquidation Committee.  The BVI Court determined that the Foreign Representative had sufficient information to reasonably foresee that the market value of customer claims could rise.  BVI Judgment at ¶¶ 21, 50 [Bankr. Ct. Dkt. No. 591, Ex. "G"].  When the Foreign Representative negotiated the Trustee Settlement, he was well aware of the terms of the Trade Confirmation, which gave him complete discretion to settle for *no* allowed customer claim if he believed it was Sentry's best interests to do so.  And the terms and conditions of the Trade Confirmation and the assignment of the Claim have been approved by

23

the BVI Court, which will oversee the distributions of Sentry's assets for the benefit of Sentry's stakeholders.  There is little doubt that this process is sufficient for United States bankruptcy law, even if not identical to the process a debtor in possession or a Chapter 7 trustee might employ.

## IV.   ALTERNATIVELY, THE APPEAL SHOULD BE DISMISSED BECAUSE THE BVI COURT HAS DENIED PERMISSION TO THE FOREIGN REPRESENTATIVE TO PROCEED WITH IT

While the Bankruptcy Court's Order and Opinion should be affirmed on the merits, this Court may alternatively choose to  dismiss the appeal because the BVI Court has denied the Foreign Representative permission to proceed with it, and there is no evidence in the record that this denial has been overturned on any appeal from the BVI Court's ruling.  Under the terms of his appointment in the BVI, the  Foreign Representative has the power to "commence, continue, discontinue or defend any action or other legal proceeding in the name and on behalf of the Company in the British Virgin Islands or elsewhere" only "with the sanction of the [BVI] Court."  Appointment Order, paras. 3(iv) and 4 [Bankr. Ct. Dkt. No. 662, Ex. B].  The BVI Court "refused" the Foreign Representative permission to pursue this appeal, as disclosed during the March 5, 2013 transcript of the Cost Hearing.  *See* RJN filed concurrently, Ex. A at 9:5-7.

Where a foreign representative lacks permission from its home court to pursue a lawsuit in the United States, it lacks standing and the suit must be dismissed.  *In re Commodore Intern., Ltd.*, 242 B.R. 243, 250 (Bankr. S.D.N.Y. 1999); *In re Empresa de Transportes Aero del Peru, S.A.*, 263 B.R. 367, 377 (S.D. Fla. 2001).  While it appears that the Foreign Representative has appealed the BVI Court's ruling, *see* RJN, Ex. A, he has not disclosed the status of such appeal.[17]

---

[17]      The Liquidator apparently sought permission, but the matter is subject to a sealed proceeding without Farnum's right to participate.  Any subsequent proceeding is likewise sealed.  The BVI Court's written decision was publicly posted on the website of the Eastern Caribbean Court of Appeals but was subsequently removed.  Out of an abundance of caution, Farnum relies solely on the publicly disclosed statements of the BVI Court during the Cost Hearing.

Because the current record demonstrates that the BVI Court has declined permission for the

Foreign Representative to proceed with this Appeal, this Court should dismiss it.

## CONCLUSION

For the reasons set forth above, Farnum respectfully requests that the Court enter an order

affirming the Opinion and Order, or alternatively dismissing the appeal, and granting such other

relief as may be just and necessary.


Dated: May 6, 2013
New York, New York

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**

___/s/ *Scott C. Shelley*_____
Kathleen M. Sullivan
Robert Juman
Scott C. Shelley
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.:  (212) 849-7000

Eric D. Winston
Shane McKenzie
Matthew Scheck
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017